## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PHILIP B. STARK,[1]


FREE SPEECH FOR PEOPLE
1320 Centre St. #405
Newton, MA 02459,

        Plaintiffs,

    v.

UNITED STATES ELECTION ASSISTANCE
COMMISSION,
633 3rd Street, NW, Suite 200
Washington, DC 20001,

        Defendant.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 20901 *et seq.*, and the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 §§ 1–15, for relief from unlawfully issued voting system guidelines that allow federal certification of voting systems that contain wireless modems and are therefore susceptible to hacking and other security risks.

2.    Defendant United States Election Assistance Commission ("EAC" or "Commission") issued the Voluntary Voting System Guidelines 2.0 ("VVSG 2.0") without

---

[1] Plaintiff Philip B. Stark concurrently moves for leave to omit his home address based on his objectively reasonable fear that publicizing the address could jeopardize his and his family's safety.

adhering to the requirement of HAVA that they be reviewed and commented on by the EAC Board of Advisors ("Board of Advisors")—of which Plaintiff Philip Stark is a member—and the EAC Standards Board ("Standards Board") prior to approval, or the requirement of HAVA and the APA that the guidelines and any modifications be provided to the public for notice and comment before approval.

3.    After submitting a proposed version of the VVSG 2.0 to the Board of Advisors and Standards Board and making it available to the public, EAC staff conducted a series of secret meetings with voting machine manufacturers. Those private companies advocated for a number of significant changes to the guidelines that would make them easier for manufacturers to meet. Among the changes was the loosening of several principal security requirements.

4.    The EAC incorporated the changes requested by voting machine manufacturers into the final version of the voting system guidelines. The VVSG 2.0, as adopted by the Commission, incorporates several new provisions that reduce the cost to manufacturers while substantially weakening the security of voting systems as compared to the version of the guidelines that was submitted to the Board of Advisors, the Standards Board, and the public.  Even though the changes were significant and not a logical outgrowth of the previously proposed version of the VVSG 2.0, the EAC voted to adopt the revised guidelines without submitting them or the modifications to any of the members of the Board of Advisors, the Standards Board, or to the public.

5.    The weakened security provisions of the VVSG 2.0 are contrary to the evidence before the EAC regarding what is necessary to secure voting systems, and the EAC's adoption of those provisions was arbitrary and capricious.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA, HAVA, and FACA.

7.     Venue lies in this district under 28 U.S.C. § 1391(e)(1).

8.     This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and under 5 U.S.C. § 706.

## PARTIES

9.     Plaintiff Philip B. Stark is a member of the U.S. Election Assistance Commission Board of Advisors. Under HAVA, the Board of Advisors must review and submit comments and recommendations regarding proposed federal voting system guidelines before the Commission may vote on final adoption. 52 U.S.C. § 20962(c). HAVA entitles Stark, as a member of the Board of Advisors, to receipt of proposed guidelines, a minimum of ninety days to review and submit comments and recommendations on them, and to have his comments and recommendations taken into consideration before the guidelines are adopted. *Id.* § 20962(b), (d)(2).

10.     Free Speech For People is a national non-partisan, non-profit 501(c)(3) organization incorporated and with its primary place of business in Massachusetts. FSFP works to renew our democracy and defend the United States Constitution, by challenging corporate financial influence in politics, confronting corruption in government, and fighting for free and fair elections. FSFP leverages election security and legal expertise, providing analysis and disseminating information to the public on issues central to our democracy. FSFP has a fundamental interest in ensuring that elections are managed by means of a transparent regulatory process that does not permit regulatory capture. FSFP's mission includes ensuring that the EAC and the public are provided with an unbiased perspective on proposed elections regulation and

policy—not merely the one-sided position of private voting machine manufacturers whose opinions were not subjected to transparent notice and comment procedures.

11.    Defendant U.S. Election Assistance Commission is an independent agency of the United States Government.

## FACTS

### A.    Help America Vote Act and Election Assistance Commission

12.    HAVA established the EAC as "a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections." 52 U.S.C. § 20922. HAVA mandates that the EAC develop studies, best practices, and/or guidelines for states to follow in key areas of election administration. *Id.*

13.    Among its provisions, HAVA mandates that the EAC create voluntary voting system guidelines and operate the federal government's voting system certification program. *Id*. §§ 20962, 20971.

14.    The VVSG are "a set of specifications and requirements against which voting systems can be tested to determine if the systems meet required standards."[2]

15.    HAVA prescribes a multi-step technical and public input process for development and adoption of the VVSG to ensure that the EAC acts with the best possible input from technical experts (both on and off its official boards) and the general public. *Id*. § 20962.

16.    HAVA establishes three unpaid advisory bodies that each assist the EAC in creating the VVSG: the Standards Board, the Board of Advisors, and the Technical Guidelines

---

[2]    *Voluntary Voting System Guidelines*, U.S. ELECTION ASSISTANCE COMM'N, https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines (last visited July 12, 2021).

Development Committee ("TGDC") which the National Institute of Standards and Technology chairs and manages. *Id*. §§ 20921, 20941, 20961.

17.     To develop the VVSG, first the TGDC provides to the EAC's Executive Director recommendations which the Executive Director "shall take into consideration." *Id*. § 20962(b)(1).

18.     Next, the EAC's Executive Director "shall submit the guidelines proposed to be adopted" to the Board of Advisors and the Standards Board. *Id*. § 20962(b)(2)–(b)(3). Both boards must submit comments and recommendations to the EAC. *Id*. § 20962(c).

19.     HAVA prohibits the EAC from voting to adopt final guidelines until it has given both the Board of Advisors and the Standards Board 90 days to review and comment on the proposed guidelines and has "tak[en] into consideration" their comments and recommendations. *Id*. § 20962(d)(1)–(2).

20.     HAVA additionally requires a public notice and comment process that includes publication of the proposed guidelines in the Federal Register, opportunity for public comment on the proposed guidelines, and opportunity for a public hearing on the record. *Id*. § 20962(a)(1)–(3).

**B.     VVSG 2.0**

21.     On December 13, 2005, the EAC adopted the first version of the VVSG, known as VVSG 1.0.

22.     In 2015, the EAC began development of an updated and strengthened set of voluntary voting system guidelines, to be known as VVSG 2.0. The EAC and the National Institute of Standards and Technology formed public working groups to help develop the new VVSG. The National Institute of Standards and Technology chairs the TGDC and receives funding from the EAC to support its development of the VVSG.

23.    The EAC directed the TGDC to bifurcate VVSG 2.0 into a high-level set of "principles and guidelines" and a more detailed set of VVSG 2.0 "requirements." After determining that both the "principles and guidelines" and the "requirements" are within the scope of statutory requirements pertaining to the VVSG, the EAC provided for both bifurcated sections of the VVSG 2.0 to pass through public notice and comment.

24.    Between September 2017 and April 2018, the TGDC, Standards Board, and Board of Advisors approved a set of proposed VVSG 2.0 Principles and Guidelines.[3]

25.    By letter dated October 2, 2018, a coalition of election security experts submitted comments to the EAC advocating for a complete ban on wireless modems in voting systems.[4]

26.    A public comment period on the proposed VVSG 2.0 Principles and Guidelines ran from February 28, 2019 to June 7, 2019, and public hearings were held on April 10, 2019 and April 23, 2019.

27.    Tens of thousands of public comments were submitted during this public notice and comment period advocating to "ban wireless; require hand-marked paper ballots."[5] The EAC refused to provide these public comments submitted between February 28, 2019 and June 7, 2019 to the TGDC when requested by the committee.[6]

---

[3]    *Voluntary Voting System Guidelines*, *supra* note 1.

[4]    Among the signatories to this letter were Philip Stark and Susan Greenhalgh. Greenhalgh currently serves as the Senior Advisor on Election Security for Free Speech For People.

[5]    *Commissioner Hovland Statement to the TGDC Regarding VVSG 2.0 Principle and Guidelines Public Comments* (Jan. 15, 2020), https://www.eac.gov/sites/default/files/2020-02/Commissioner_Hovland_Statement_to_the_TGDC_Regarding_VVSG_2.pdf (acknowledging receipt of tens of thousands of comments advocating to "ban wireless; require hand-marked paper ballots").

[6]    *Id.*

28.     Plaintiff Stark testified at the April 23, 2019 hearing. He recommended that the VVSG 2.0 prohibit wireless communication hardware in equipment used to mark ballots, record votes, or tabulate votes and explained that simply disabling wireless capability in software is not an adequate precaution against hacking. Stark also advised that no system for capturing or tabulating votes should ever be connected to the Internet, to a private network that is connected to the Internet, or to any other public communications infrastructure.[7]

29.     Between September 2019 and February 2020, the TGDC met to discuss draft VVSG 2.0 Requirements.[8] During this time the TGDC and members of the National Institute of Standards and Technology ("NIST") spoke with vendors about the proposed VVSG 2.0 language and considered their input as well as reconciled their comments with other concerns, all before finalizing the March 2020 version of the VVSG 2.0.

30.     On October 15, 2019, a coalition of election security non-profit organizations submitted a letter to the TGDC advocating for a ban on wireless modems and internet connectivity in the VVSG and for the first time made the TGDC aware of the volume of comments advocating for a wireless ban that the EAC had withheld.

31.     At a December 18, 2019 meeting of the TGDC, Gemma Howell (a NIST representative) confirmed that, under the draft VVSG 2.0 Requirements, an approved voting system could not have wireless capability. While presenting a slide with the heading "VVSG 2.0 Requirements," Howell stated:

---

[7]     *Video Player U.S. EAC Public Hearing 042319*, U.S. ELECTION ASSISTANCE COMM'N, at 01:09 (Apr. 23, 2019), https://www.eac.gov/media/video-player-us-eac-public-hearing-042319.

[8]     *Verbatim Transcript: Technical Guidelines Development Committee Meeting*, U.S. ELECTION ASSISTANCE COMM'N 37 (Sept. 19–20, 2019, 9:12 AM), https://www.eac.gov/sites/default/files/2020-01/EAC09192019VerbatimTGDC%20%282%29.pdf.

Finally, here, to close out the network communication section we have the two requirements within the VVSG … the first one being that the voting system must not be capable of establishing a connection to an external network or connecting to any device that is capable of establishing a connection to an external network … so the scanner or tabulation wouldn't have the cellular modem inside it, that would be outside of the voting system on a completely separate device …. [9]

So, **the voting system itself would not have any wireless capability built into it** so you wouldn't be able to access … its network capabilities …. We would **remove that wireless capability** from the voting system like I mentioned, so there would be no wireless communication.[10]

32.     Among the significant election security concerns justifying the ban on wireless modems in voting machines in the draft VVSG 2.0 Requirements, the December 18, 2019 presentation explained that the modems and/or radios present in voting systems are an access point for remote manipulation of ballots and election results, or for ransomware attacks to access and hold election systems hostage.

33.     On February 7, 2020, the TGDC voted to recommend these proposed VVSG 2.0 Requirements to the EAC's Acting Executive Director.[11]

34.     On March 11, 2020, the Executive Director of the EAC submitted to the Board of Advisors and the Standards Board the version of the VVSG 2.0 Principles and Guidelines and Requirements that the TGDC recommended (hereinafter "March 2020 version of the VVSG 2.0" or "March 2020 version").

---

[9]      U.S. Election Assistance Comm'n, *EAC Technical Guidelines Development Committee Conference Call Meeting*, YOUTUBE, at 37:17 (Dec. 19, 2019), https://www.youtube.com/watch?v=ycPX5yt0N-k&t=1745s (emphasis added) (Gemma Howell, Co-Chair of the VVSG Election Cybersecurity Working Group).

[10]     *EAC Technical Guidelines Development Committee Conference Call Meeting*, *supra* note 8, at 51:18, 52:40 (emphasis added).

[11]     *Voluntary Voting System Guidelines*, *supra* note 1.

35.     Upon information and belief, all of the public working groups that had assisted in development of the VVSG 2.0 were disbanded at the time the March 2020 version was submitted for public comment.

36.     The EAC submitted the March 2020 version of the VVSG 2.0 for public comment between March 24, 2020 and June 22, 2020. 85 Fed. Reg. 16,621 (Mar. 24, 2020).

37.     Public hearings were held on the March 2020 version on March 27, May 6, and May 20, 2020.

38.     By letter dated June 22, 2020, Plaintiff Free Speech For People submitted comments to the EAC, including to express support for "the provisions that address auditability, interoperability, software independence, ballot secrecy and that ban internet connectivity."

39.     Upon information and belief, the EAC Board of Advisors reviewed and commented on the March 2020 version.

40.     On July 31, 2020, the EAC Standards Board voted to approve the March 2020 version of the VVSG 2.0.

**C.     EAC's Closed Door Meetings with Private Voting Machine Vendors and Material Revisions to Guidelines**

41.     At a July 31, 2020 meeting of the Standards Board, the EAC acknowledged that its staff had been meeting privately with voting machine vendors on a weekly basis to discuss their comments on the March 2020 version of the VVSG 2.0 that had been recommended by the TGDC, reviewed by the Board of Advisors and Standards Board, and submitted for public comment.[12]

---

[12]     *Verbatim Transcript: Standards Board Annual Meeting*, U.S. ELECTION ASSISTANCE COMM'N, at 54–55, 64–65 (July 31, 2020), https://www.eac.gov/sites/default/files/2020-08/EAC_073120_Verbatim_StandardsBoard.pdf; *see also Dispelling Misinformation about VVSG 2.0*, U.S. ELECTION ASSISTANCE COMM'N (Feb. 5, 2021), https://www.eac.gov/documents/2021/02/05/vvsg-20-dispelling-misinformation (acknowledging meeting with vendors).

42.     In fact, the EAC held private, closed-door meetings with voting machine manufacturers on a weekly basis from July through August of 2020, as evidenced by records disclosed in response to FSFP's FOIA request.

43.     By email dated August 4, 2020, addressed to Jerome Lovato, Mona Harrington, and Jessica Bowers of the EAC, Susan Greenhalgh of FSFP requested to join the weekly meetings between the EAC and vendors. The EAC did not respond.

44.     By email dated August 12, 2020, addressed to Jerome Lovato, Mona Harrington, and Jessica Bowers, Susan Greenhalgh of FSFP again requested to join the weekly meetings between the EAC and vendors. The EAC did not respond.

45.     In the fall of 2020, rumors circulated that the EAC was planning to remove the ban on wireless networking hardware in voting machines in the March 2020 version of the VVSG 2.0 in response to pressure from voting machine manufacturers. Any such revisions would be contrary to the evidence before the Commission and to the recommendations of the TDGC and NIST. The rumored relaxation of requirements also ran counter to prior recommendations of Plaintiff Stark and other advisors, as well as comments submitted by Plaintiff FSFP and other members of the public.

46.     On January 13, 2021, EAC Executive Director (ED) Mona Harrington provided an update to the Board of Advisors in their Quarterly Call.[13] ED Harrington stated that "the staff recently briefed EAC commissioners on the VVSG 2.0 in preparation for a vote."[14] This meeting of the EAC was not made public.

---

[13]     U.S. Election Assistance Comm'n, *Board of Advisors Quarterly Meeting*, YOUTUBE, at 1:01:07–1:07:14, (Jan. 13, 2021), https://www.youtube.com/watch?v=rB5n3hcX3iU&t=4s.

[14]     *Board of Advisors Quarterly Meeting*, *supra* note 12, at 52:40–54:00.

47.     On the January 13, 2021 Board of Advisors Quarterly Call, three members of the Board of Advisors questioned ED Harrington as to the timing of the Commission's vote on the VVSG 2.0 and the nature of advance notice that would be provided to the Board of Advisors.

    a.     ED Harrington acknowledged the EAC's obligation to publish notice in the Federal Register two weeks in advance and informed the Board of Advisors that they would therefore receive advance notice two weeks prior "at the latest." [15]

    b.     Chairman Michael Yaki requested that ED Harrington provide notice directly to the Board of Advisors when published.[16]

48.     On January 26, 2021, the EAC published notice in the Federal Register that its vote on the VVSG 2.0 would be February 10, 2021. 86 Fed. Reg. 7,077 (Jan. 26, 2021). The notice failed to include or reference the material revisions replacing the March 2020 version of the VVSG 2.0.

49.     Upon information and belief, ED Harrington did not provide direct notice or a copy of the revised VVSG 2.0 to the Board of Advisors prior to the February 10, 2021 vote on the revised version.

50.     On February 1, 2021, nine days before the scheduled vote, the EAC finally posted on its website the proposed final VVSG 2.0 and a redline showing many significant changes that the Board of Advisors, the Standards Board, and the public had never seen.

---

[15]     *Board of Advisors Quarterly Meeting*, *supra* note 12, at 1:06:10–1:07:14.

[16]     *Board of Advisors Quarterly Meeting*, *supra* note 12 at 1:06:10–1:07:14 ("Ok, what I would like on behalf of the board of advisors [] is when you send the notice out for the meeting if you would let us know? That would be great. And then we can move forward from there. If there's any last minute information that the members want to transmit to the board ... to the commission. That would be great.").

51.     Furthermore, the Board of Advisors, the Standards Board, and the public could not reasonably have anticipated these significant changes.[17] These material revisions favor voting machine vendors and appear to be a product of the closed-door advisory committee meetings held between the EAC and vendors after the close of the notice and comment period.

52.     Among the significant changes in the proposed final VVSG 2.0 was language specifically permitting inclusion of wireless networking devices in voting machines if they are disabled by software.[18] Other significant changes, the potential for which the public was given no notice, included: (i) removal of the requirement for all voting systems to provide data reports that account for all cast ballots and all valid votes at the termination of a given election; (ii) removal of a transparency requirement requiring public access, without an explicit request, to any cryptographic End-to-End protocol submitted for certification, for open review for two years before it enters the voting system certification process; (iii) limitation to voter-facing devices of the logging requirements for backend voting systems to record external connections or disconnections during the activated voting state; (iv) removal of a standard for physical locks installed in voting machines; (v) removal of the requirement that all physical security countermeasures which are reliant on electrical power log incidents of power disruption; (vi) removal of the requirement that systems be expected to have a life span of ten years; and (vii) removal of the ban on printing voting machine vendors' advertisements on the ballot.

---

[17]     *Voluntary Voting System Guidelines VVSG 2.0 (Redline Version)*, U.S. ELECTION ASSISTANCE COMM'N (Feb. 10, 2021), https://www.eac.gov/documents/vvsg-20-redline-version.

[18]     *Voluntary Voting System Guidelines VVSG 2.0*, U.S. ELECTION ASSISTANCE COMM'N,                    (Feb.                    10,                    2021), https://www.eac.gov/sites/default/files/TestingCertification/Voluntary_Voting_System_Guidelines_Version_2_0.pdf.

53.     On February 10, 2021, the Commission voted to adopt the significantly changed version of the VVSG 2.0 that was posted on its website on February 1, 2021.[19]

54.     The Commission's actions deprived Stark of his rights under HAVA to comment and make recommendations on the proposed guidelines and to have his comments and recommendations taken into consideration by the EAC, and they prevented Stark from performing his statutory role in the issuance of voting system guidelines.

55.     The Commission's actions deprived FSFP of opportunities to: observe the voting machine manufacturer advisory committee; provide a counter-balanced perspective to the biased articulation of election security and operational concerns provided by financially-interested private voting machine manufacturers; disseminate information and analysis concerning the voting machine manufacturer advisory committee; and comment on material changes to the VVSG 2.0 driven by voting machine manufacturers prior to the Commission's vote on February 10, 2021.

56.     When the EAC failed, prior to the February 10, 2021 vote, to reopen the public comment period to allow comment on the modifications to the March 2020 version of the VVSG 2.0, FSFP was deprived of its rights to examine and inform the public of important election security concerns that were implicated by the new language and to submit public comments to EAC Commissioners before the vote.

57.     As a direct result of the significantly changed VVSG 2.0, FSFP must expend extraordinary resources to educate state elections officials about the materiality of the revisions to the VVSG 2.0 and the significance of the EAC's abdication of responsibility to regulate modem

---

[19]     Press Release, U.S. Election Assistance Comm'n, *U.S. Election Assistance Commission Adopts New Voluntary Voting System Guidelines 2.0* (Feb. 10, 2021), https://www.eac.gov/news/2021/02/10/us-election-assistance-commission-adopts-new-voluntary-voting-system-guidelines-20.

technology in voting systems. As a result of the last-minute changes to the VVSG 2.0, FSFP and other elections monitoring organizations will be forced to monitor ongoing adherence to the software disablement requirement now permitting modems in voting systems and vote tabulators. The burden imposed on FSFP and other elections monitoring organizations as a result of the revisions to the VVSG 2.0 is not only significant and unforeseen, but an abdication of the core elections technology certification duties of the EAC. Because of these revisions and the Commission's failure to comply with the APA and HAVA, FSFP has been and will continue to be forced to divert its limited resources from other essential work serving its mission of renewing democracy and challenging government corruption.

## CLAIMS FOR RELIEF

58.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

59.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

60.     Under the APA, "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." *Id.* § 704.

61.     The APA provides for the reviewing court to "hold unlawful and set aside" agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or taken "without observance of procedure required by law." *Id.* § 706(2)(A), (D).

62.     The Defendant EAC is an "agency" whose final actions are reviewable under the APA.

63.     Defendant's February 10, 2021 adoption of the VVSG 2.0 constitutes "final agency action."

## COUNT I

### Adoption of the VVSG 2.0 Without Procedure
### Required by 52 U.S.C. § 20962(b)

64.     Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

65.     Defendant was obligated under 52 U.S.C. § 20962(b) to submit "the guidelines proposed to be adopted" or "any modifications to such guidelines" to the Board of Advisors and the Standards Board, and to take into consideration their comments and recommendations before voting on final adoption of the VVSG 2.0.

66.     Defendant failed these obligations because it voted on final adoption of a significantly modified version of the VVSG 2.0 that it had not submitted to Plaintiff Stark, other members of the Board of Advisors, or the Standards Board for comments and recommendations. The new version was so different from the version Defendant submitted that the modifications could not have been reasonably anticipated.

67.     Pursuant to 52 U.S.C. § 20962(d)(1), the significant changes to the VVSG 2.0 are "not [] considered to be finally adopted by the [EAC]" because Defendant did not take into consideration comments and recommendations on those changes from the Board of Advisors or the Standards Board; neither the significantly revised VVSG 2.0 nor the modifications were submitted to them.

68.     Defendant's adoption of the materially changed VVSG 2.0 without providing them to the Board of Advisors or the Standards Board and without considering their comments and recommendations on the new version violated the procedural requirements of 52 U.S.C. § 20962.

69.     The significant changes to the VVSG 2.0 adopted by Defendant and identified in paragraph 52 should be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(D) and 52 U.S.C. § 20962(d)(1).

## COUNT II

### Adoption of the VVSG 2.0 Without Procedure
### Required by 52 U.S.C. § 20962(d)

70.     Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

71.     HAVA prohibits Defendant from voting on final adoption of the VVSG 2.0 until ninety days after submission of the proposed guidelines or modifications to the Board of Advisors and the Standards Board. 52 U.S.C. § 20962(d)(2).

72.     Defendant violated HAVA by voting to adopt the significantly revised version of the VVSG 2.0 without providing it or the modifications to Plaintiff Stark, other members of the Board of Advisors or the Standards Board at least ninety days in advance.

73.     The significant changes to the VVSG 2.0 adopted by Defendant and identified in paragraph 52 should be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(D).

## COUNT III

### Adoption of the VVSG 2.0 Without Procedure
### Required by 52 U.S.C. § 20962(a)

74.     Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

16

75.     Defendant was obligated under 52 U.S.C. § 20962(a) to publish "notice of the proposed guidelines in the Federal Register" and to provide opportunity for public comment and public hearing as part of the process of adopting the VVSG 2.0.

76.     Defendant failed this obligation because it adopted a version of the VVSG 2.0 that incorporated significant modifications and was significantly different in substance from the version that Defendant published in the Federal Register and made available for public comment and on which the Defendant conducted a public hearing.  Because the new version was so different, Plaintiff FSFP and the public could not have reasonably anticipated the modifications.

77.     Defendant's adoption of the materially changed VVSG 2.0 without publishing a new notice and providing an opportunity for public comments and a public hearing on the new version violated the procedural requirements of 52 U.S.C. § 20962(a).

78.     The significant changes to the VVSG 2.0 adopted by Defendant and identified in paragraph 52 should be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(D).

**COUNT IV**

**Adoption of the VVSG 2.0 Without Procedure
Required by 5 U.S.C. § 553**

79.     Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

80.     The adoption of the VVSG 2.0 constituted "rule making" within the meaning of the APA, 5 U.S.C. § 551(5), and was subject to the APA's notice-and-comment requirements, *id.* § 553.

81.     Defendant was obligated under 5 U.S.C. § 553(b) to publish in the Federal Register notice of the proposed adoption of the VVSG 2.0 that included "either the terms or substance" of the guidelines proposed to be adopted and to allow for public comment on the proposed guidelines.

82.     Defendant failed this obligation because it adopted a version of the VVSG 2.0 that incorporated significant modifications and was significantly different in substance from the version that Defendant published in the Federal Register, made available for public comment, and on which Defendant conducted a public hearing. Because the new version was so different, Plaintiff FSFP and the public could not have reasonably anticipated the modifications. Thus, they were deprived of the opportunity to comment on the modifications before the modified version was adopted.

83.     Defendant's adoption of the significantly changed VVSG 2.0 without publishing a new notice and providing an opportunity for comment on the new version violated the procedural requirements of 5 U.S.C. § 553.

84.     The significant changes to the VVSG 2.0 adopted by Defendant and identified in paragraph 52 should be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(D).

## COUNT V

### Arbitrary and Capricious Agency Action

85.     Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

86.     The significant changes to the VVSG 2.0 that Defendant made after meeting secretly with voting machine manufacturers are contrary to the evidence before the agency of the components of a voting system that are necessary to safeguard against hacking and other threats to the integrity of the voting system. For example, Plaintiff Stark testified that simply disabling wireless capability in equipment used to mark ballots, record votes or tabulate votes is insufficient to prevent hacking, yet the final VVSG 2.0 allows federal certification of voting systems that include wireless networking devices if they can be disabled.

87.    The inclusion of devices capable of connecting voting systems wirelessly to the internet, even if disabled (as permitted in the final revisions to the VVSG 2.0), introduces significant potential vulnerabilities to the security of the voting systems, because reliably, consistently, and effectively disabling the devices is complex and difficult. Verifying persistent conformance to the provision that the wireless capability has been disabled will impose a burden on FSFP and the public.

88.    Permitting voting systems to obtain EAC certification merely by including software disabling modem hardware rolls back pre-existing protections. It creates a loophole for EAC certification of machines containing wireless modems and radio technologies that do not meet VVSG requirements, or could not have met VVSG 1.0 requirements pertaining to these technologies, based upon the representation that they are software disabled. This weakens the protections in place prior to passage of the VVSG 2.0 without notice, explanation, or justification.

89.    Those changes to permit wireless devices that are disabled are not supported by a reasoned explanation.

90.    The significant changes to the VVSG 2.0 adopted by Defendant and identified in paragraph 52 should be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(A).


## COUNT VI

### Adoption of the VVSG 2.0 Without Procedure
### Required by Federal Advisory Committee Act

91.    Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

92.    FACA was enacted to keep Congress and the public "informed with respect to the number, purpose, membership, activities, and cost of advisory committees," 5 U.S.C. app. 2 § 2(b)(5). Thus, one of FACA's animating purposes was to give the public a means to access

information about the "advisory committees" the government has "established to advise officers and agencies in the executive branch." *Id*. § 2(a). Indeed, one of the main underlying concerns behind FACA's adoption was a lack of accountability among advisory committees "established by the Executive Branch." *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 459 (1980).

93.     FACA defines an advisory committee as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof … which is—(A) established by statute or reorganization plan, or (B) established or utilized by the President, or (C) established or utilized by one or more agencies." 5 U.S.C. app. 2 § 3(2). A working group constitutes an advisory committee under FACA where "it is asked to render advice or recommendations, as a group, and not as a collection of individuals." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 913 (D.C. Cir. 1993).

94.     Where a group falls within the meaning of "advisory committee," FACA prohibits meeting or action until a charter for the committee has been filed. 5 U.S.C. app. 2 § 9(c). It also requires: publication of a notice in the Federal Register of the establishment of an advisory committee, *id*. § 9(a)(2); notice in the Federal Register in advance of meetings, *id*. § 10(a)(2); that advisory committee meetings be "open to the public," *id*. § 10(a)(1); maintenance of "[d]etailed" minutes of meetings, *id*. § 10(c); and publication of all records not exempted by the Freedom of Information Act, *id*. § 10(b). FACA further mandates that "the membership of the advisory committee … be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." *Id*. § 5(b)(2), (c).

95.     The voting machine vendor group established by Defendant constituted an advisory committee within the meaning of FACA. The group included members not employed by the federal government, *id*. § 3(2)(i), and on information and belief, it convened on a weekly basis with

Defendant, consisted of a core group of private voting machine vendors, was called upon by Defendant to render advice about the VVSG 2.0, and rendered such advice as a group rather than as a collection of individuals.

96.     Defendant failed to ensure the advisory committee of voting machine vendors was constituted with representation providing balanced points of view. Further, Defendant failed to publish the establishment of the advisory committee and to file for a committee charter. Defendant also failed to ensure detailed records of the meetings, including meeting minutes, were available to the public, did not give advance notice of meetings in the Federal Register, and closed the meetings to the public.

97.     Defendant's FACA violations have injured Plaintiff FSFP by depriving it of an opportunity to participate in any of the meetings between the vendor advisory committee and Defendant. Additionally, Defendant's failure to open the meetings to the public and to publicize meeting records deprived Plaintiff FSFP of its statutory right to obtain information relating to the development of the VVSG 2.0.

98.     Defendant's meetings with the vendor advisory group were therefore in contravention of FACA and unlawful. The minutes and other documents from those meetings should be made public, and the significant changes to the VVSG 2.0 that resulted from those meetings and are identified in paragraph 52 should be set aside pursuant to 5 U.S.C. § 706(2)(D).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     Declare that Defendant's meetings with voting machine manufacturers failed to observe the procedural requirements of Pub. L. 92-463, 86 Stat. 770.

b.      Declare that Defendant's meetings with voting machine manufacturers failed to observe the procedural requirements of 5 U.S.C. § 552b.

c.      Declare that Defendant's adoption of the VVSG 2.0 failed to observe the procedural requirements of 52 U.S.C. § 20962(a).

d.      Declare that Defendant's adoption of the VVSG 2.0 failed to observe the procedural requirements of 52 U.S.C. § 20962(b).

e.      Declare that Defendant's adoption of the VVSG 2.0 failed to observe the procedural requirements of 52 U.S.C. § 20962(d).

f.      Declare that Defendant's adoption of the VVSG 2.0 failed to observe the procedural requirements of 5 U.S.C. § 553.

g.      Declare that Defendant's adoption of the VVSG 2.0 failed to observe the procedural requirements of 5 U.S.C. app. 2 §§ 1–15.

h.      Declare that Defendant's adoption of the provisions of the VVSG 2.0 identified in paragraph 52 above, which significantly changed from the version submitted to the Board of Advisors, Standards Board, and the public, was arbitrary and capricious.

i.      Hold unlawful and set aside pursuant to 5 U.S.C. § 706(2)(D) those particular provisions of the VVSG 2.0 identified in paragraph 52 above, that significantly changed from the version submitted to the Board of Advisors, Standards Board, and the public.

j.      Award Plaintiffs reasonable attorneys' fees and costs.

k.      Grant such other and further relief that this Court deems just and appropriate.

Date:   July 13, 2021

Respectfully submitted,

/s/ Caroline L. Wolverton

_____

Matthew R. Nicely
D.C. Bar No. 430567
Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000

/s/ Ronald Fein

_____

FREE SPEECH FOR PEOPLE
Ronald Fein
D.D.C. Bar No. MA0012
rfein@freespeechforpeople.org
John Bonifaz (*pro hac vice* motion forthcoming)
jbonifaz@freespeechforpeople.org
Courtney Hostetler (*pro hac vice* motion forthcoming)
chostetler@freespeechforpeople.org
1320 Centre Street, Suite 405
Newton, MA 02459
Tel: (617) 244-0234

*Counsel for Plaintiffs*