# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP B. STARK and FREE SPEECH
FOR THE PEOPLE,

    *Plaintiffs*,

v.

UNITED STATES ELECTION
ASSISTANCE COMMISSION,

    *Defendant*.

Civil Action No. 1:21-cv-01864 (CKK)

## DECLARATION OF MONA HARRINGTON

I, Mona Harrington, make the following declaration based on personal knowledge and information made available to me in the course of my official duties:

1. I currently serve as the Executive Director of the United States Election Assistance Commission (the "EAC"), an independent agency established through the Help America Vote Act of 2002 ("HAVA").

2. As Executive Director, my duties include preparing policy recommendations for EAC Commissioner approval; implementing policies approved by the EAC Commissioners; and taking responsibility for administrative matters.

3. I am submitting this declaration to provide further details about five meetings conducted by the EAC over a six-week period in the summer of 2020, regarding feasibility concerns raised by witnesses during the May 20, 2020 EAC public hearing with manufacturers and testing laboratories on the proposed version 2 of the EAC's voluntary voting system guidelines. As described below, I personally attended each of these meetings.

VVSG Background

4.  One of the duties that HAVA bestows upon the EAC is to adopt voluntary voting system guidelines ("VVSG"). 52 U.S.C.A. § 20922(1). The VVSG are ultimately used by the EAC to guide its HAVA-mandated voting system hardware and software testing and certification program. 52 U.S.C.A. § 20971.

5.  HAVA provides that the EAC Executive Director plays a key role in the development of the VVSG (including modifications thereof) that is submitted to the EAC Commissioners for consideration of adoption. Specifically, HAVA provides that "[t]he [Technical Guidelines Development Committee] shall assist the Executive Director of the Commission in the development of the voluntary voting system guidelines." 52 U.S.C.A. § 20961(b)(1). HAVA further provides that "[i]n developing the voluntary voting system guidelines and modifications of such guidelines under this section, the Executive Director of the Commission shall take into consideration the recommendations provided by the Technical Guidelines Development Committee under section 221." 52 U.S.C.A. § 20962(b)(1). Finally, HAVA provides that the Executive Director of the EAC shall submit the guidelines proposed to be adopted or modified to the Board of Advisors and the Standards Board, statutorily created federal advisory committees, for review and an opportunity for those boards to submit comments and recommendations to the EAC. 52 U.S.C.A. § 20962(b)(2)-(3).

6.  A draft of VVSG version 2.0 ("VVSG 2.0") was recommended unanimously by the Technical Guidelines Development Committee on February 7, 2020. VVSG 2.0 was sent to the Board of Advisors and Standards Board Executive Board on March 11, 2020. VVSG 2.0 was published in the Federal Register for public comment on March 24, 2020. The EAC held three public hearings concerning the potential adoption of VVSG 2.0 on March 27, 2020; May 6, 2020; and May 20, 2020.

VVSG 2.0 was ultimately adopted by the EAC Commissioners at a public meeting held on February 10, 2021.

VVSG 2.0 Implementation Working Group

7.     In the summer of 2020, the EAC coordinated five teleconference meetings, which the EAC informally entitled the "VVSG 2.0 Implementation Working Group," (referred to herein as "Working Group") for the purpose of obtaining individual technical feedback from voting system manufacturers on feasibility and implementation concerns raised at the May 20, 2020 EAC public hearing and comments submitted in response to posting the draft VVSG 2.0 to the Federal Register. The EAC previously approved VVSG 1.0 in 2005 and VVSG 1.1 in 2015, but no voting system has gone through testing and certification to the 1.1 guidelines. As a result, fielded voting systems are still certified to VVSG 1.0. Because the EAC does not have regulatory or enforcement authority related to voting systems, and VVSG is a voluntary standard, it is critically important that voting system manufacturers actually design and build voting systems to VVSG 2.0 in order for VVSG 2.0 to be of any value. Significant EAC and National Institute of Standards and Technology (NIST) resources and time were expended on drafting VVSG 2.0. Therefore, individual technical feedback from voting system manufacturers on what aspects of VVSG 2.0 were potentially overly burdensome, difficult to implement, or unnecessarily costly was sought by the EAC through the Working Group discussions.

8.     EAC staff determined who to invite to this working group. Specifically, because of the need to understand feasibility concerns with implementing VVSG 2.0, EAC invited voting program staff from NIST, employees of the EAC accredited voting system test laboratories, and employees of certain voting system manufacturers. In addition, the meetings were led by EAC Testing and Certification Director and attended by approximately 30 to 35 people consisting of approximately 10

from EAC, 3 from test laboratories, 5 from NIST, and 15 from the voting system and technology industry. Each meeting lasted approximately one hour.

9.   The dates of the above-described meetings were June 12, 2020; June 26, 2020; July 10, 2020; July 17, 2020; and July 24, 2020.

10.  At the meeting of the Working Group held on June 26, 2020, I said to the attendees:

> We want to have a technical discussion to ensure that we are not adopting requirements that don't seem like you can build to them. And again, that's what we heard during the hearing. So, the TGDC, NIST, a lot of work went into this. Here we are twelve plus months later and we have this hearing and it seemed abundantly clear that there are concerns building to these requirements. This is an informal discussion in the sense that we are not an official FACA board that is going to be advising the agency. But this is a good platform for manufacturers and laboratories and we have other experts on the phone to have the discussion as to why perhaps you cannot build to some of these requirements. We then will go back and discuss what we heard, perform the research, and ultimately I will be making a recommendation to the Commissioners.

11.  During meetings, the EAC solicited individual input from attendees of the Working Group on any concerns they held related to future implementation challenges that could arise if VVSG 2.0 was approved, including based on their prior experience with VVSG 1.0 and 1.1 implementation.

12.  The EAC did not create, approve, or utilize either any organization or leadership structure for the Working Group, or any subgroups of the Working Group based on subject matter expertise or any other organizing principle. Rather, attendees shared only their individual views on all issues discussed at the meetings.

13. The EAC did not create, approve, or utilize any process through which the attendees of the Working Group could either vote on or veto any collective advice or recommendations concerning VVSG 2.0. At no time during any Working Group meeting did a vote on any issue occur.

14. Thus, the EAC did not create, approve, or utilize any process through which the attendees of the Working Group could arrive at collective recommendations concerning VVSG 2.0. That is, the attendees of the Working Group were not asked to, and did not, provide any advice or recommendations as a group.

15. As noted above, the last of the Working Group meetings was held on July 26, 2020. The EAC has not conducted any further meetings with this group since that time, nor does it have any intention to do so again at any point in the future.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed on 9/30/2021.

*Mona Harrington*
Mona Harrington