IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILIP B. STARK and FREE SPEECH FOR THE PEOPLE,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES ELECTION ASSISTANCE COMMISSION,<br><br>*Defendant*. | Civil Action No. 1:21-cv-01864 (CKK) |

**JOINT STATUS REPORT**

Pursuant to the Court's February 26, 2024 minute order, Plaintiffs, Philip B. Stark and Free Speech for People ("FSFP," and together with Stark, "Plaintiffs") and Defendant U.S. Election Assistance Commission ("EAC," and together with Plaintiffs, the "Parties"), through their undersigned counsel, submit this joint status report.

Specifically, the Court has ordered the Parties to briefly state their respective positions on the EAC's pending Motion to Dismiss, or in the Alternative, for Partial Summary Judgment (ECF No. 16) (the "Motion"), and to indicate any new persuasive or binding case law for the Court's review. The Parties have set forth their respective positions below.

**Plaintiffs' Position**

a. <u>Plaintiffs' Position on the EAC's Pending Motion</u>

Plaintiffs' position remains that neither the dismissal the EAC requests nor partial summary judgment is warranted, and the EAC's Motion to Dismiss, or in the Alternative, for Partial Summary Judgment should be denied. Further, Plaintiffs request production of the administrative record as soon as possible so that they can prepare their motion for summary judgment on their claims under the Administrative Procedure Act ("APA"), Help America Vote Act ("HAVA") and the Federal Advisory

Act ("FACA"). Plaintiffs' Opposition to the government's Motion to Dismiss describes in detail the significant changes between the proposed VVSG 2.0 and the final version of the VVSG 2.0 adopted by the Election Assistance Commission. Opp'n to Def.'s Mot. at 4-11.

In addition, while the EAC's Motion has been pending, the harm that Plaintiffs foresaw with the passage of the significantly changed version of VVSG 2.0 has come to fruition, underscoring that FSFP has suffered concrete injury sufficient to confer standing. Specifically, in 2023, the EAC approved a test plan for voting system certification under VVSG 2.0 that does not examine, *at all*, whether the voting systems are capable of connecting to wireless networks.[1]

As explained in Plaintiffs' Memorandum of Points and Authorities in Opposition to the EAC's Motion (ECF No. 19), the EAC's adoption of the VVSG 2.0 injures FSFP's organizational activities by requiring FSFP to undertake additional, labor-intensive monitoring and analyses of voting systems to assess their security. Because of the EAC's 2023 test plan approval under VVSG 2.0, FSFP is unable to rely on EAC certification testing as indicative of whether voting systems have or are capable of having wireless connectivity because the EAC has approved certification testing that does not examine whether the voting systems can connect to wireless networks. As a result, the harm Plaintiffs expected has come to pass, and FSFP must divert its limited resources from other essential work to determine and monitor whether voting systems may be vulnerable to wireless attacks because the EAC's approved voting system certification testing plan does not test for wireless connection capability. Specifically, FSFP has had less time for its public education and partner education efforts on internet voting, has not done a partner briefing in months, has had less time to corroborate with other election security experts on developing principles for secure elections, and has been diverted from sharing, publicizing, and promoting those principles. In other words, the EAC's failure to require testing of wireless

---

[1] *See* EAC VVSG 2.0 Certification Test Plan Smartmatic Voting System Voting System Release (VSR)1 2.1, Pro V&V (Sept. 7, 2023), https://www.eac.gov/sites/default/files/2023-09/Smartmatic%20VSR1%202.1%20Test%20Plan%20Rev%200.pdf.

connectivity capabilities in EAC-certified voting systems underscores the extent of FSFP's injuries caused by the EAC's violations of HAVA, the APA, and FACA.

    b. <u>Additional Case Law</u>

*White Coat Waste Project, Inc. v. U.S. Dep't of Health & Human Services*, No. 1:22-CV-00006 (CJN), 2023 WL 4930093 (D.D.C. Aug. 2, 2023). White Coat Waste Project, Inc., a "bipartisan taxpayer watchdog organization" with a mission to "unite animal-lovers and liberty-lovers to find, expose, and defund wasteful and cruel taxpayer-funded animal experimentation," adequately alleged injury-in-fact sufficient for organizational standing when National Institutes of Health's ("NIH") exempted foreign grant recipients from having to maintain animal care committees. *Id.* White Coat alleged that it identifies wasteful and cruel animal experimentation by relying on public records that are created only by grant recipients with animal care committees. *Id.* at *3. Foreign grant recipients without animal care committees are not required to keep and produce the records that White Coat seeks, forcing White Coat to comb through various other sources for the desired information. *Id.* at *4. White Coat alleged that, as a result of NIH's exemption of foreign grant recipients from having to maintain animal care committees, it had to redirect resources to counteract the loss of public records. *Id.* at *5. Similarly for FSFP here, as a result of the passage of the significantly changed version of VVSG 2.0, VVSG 2.0's allowance of wireless capability, and the EAC's approval of certification testing that does not examine whether the voting systems can connect to wireless networks, FSFP must divert its limited resources from other essential work to analyze the extent to which networking devices submitted for federal certification are disabled. *See* Opp'n to Def.'s Mot. at 16-17.

*Humane Soc'y of the United States v. United States Dep't of Agric.*, 41 F.4th 564 (D.C. Cir. 2022), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022). The Humane Society and its members alleged a concrete, pecuniary injury based on the alleged unlawful repeal of a rule implementing the Horse Protection Act, which would have banned action devices intended to cause horse soring and imposed new inspector

requirements.  *Id.* at 567.  Like FSFP, which as a result of the EAC's VVSG 2.0 approval must redirect limited time and resources away from existing fair elections work like its public education initiatives and post-election auditing, *see* Opp'n to Def.'s Mot. at 17, the Humane Society had to redirect limited time and resources away from existing horse protection work to identify, investigate, publicize, and counteract continuing soring activities.  *Humane Soc'y*, 41 F.4th at 567-68.

*Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2023 WL 7463462 (N.D. Ga. Nov. 10, 2023).  At the summary judgment stage, voting advocacy organization Coalition for Good Governance ("CGG") showed injury-in-fact sufficient for standing to challenge state and county officials' selection, implementation, and maintenance of the Dominion Ballot Marking Device voting system ("BMD").  *Id.* at *29-38.  Like FSFP, which must redirect limited time and resources away from existing fair elections work like its public education initiatives and post-election auditing as a result of the EAC's VVSG 2.0 approval, *see* Opp'n to Def.'s Mot. at 17, CGG had to redirect resources to programs designed to counteract the injury to its interest as a consequence of the defendants' use of the BMD system.  *Curling*, 2023 WL 7463462, at *33-34 ("CGG can certainly establish a diversion of resources by showing that its expenditure of resources in response to Defendants' conduct has limited its ability to pursue other projects that also advance its organizational mission.").

*Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 185 (D.D.C. 2022).  Plaintiffs America First Legal Foundation, Fight for Schools and Families, and Parents Defending Education argued that the United States Department of Education's ("the Department") creation of a group known as the National Parents and Families Engagement Council ("the Council") violated FACA's publication and open-records requirements.  *Id.* at 174.  Plaintiffs alleged injury-in-fact sufficient for standing because they sought information about the Council and what occurred at Council meetings, and "in the FACA context, an informational injury—even without an accompanying diversion of resources—is sufficient to confer Article III standing."  *Id.* at 180.  Further, like the VVSG 2.0 Implementation Working Group,

4

the Council "easily satisfie[d] the structure, membership, and purpose requirements" of an advisory committee. *Id.* at 181.[2]  First, the "organized structure" requirement is "not a high bar to clear" and does not require a hierarchical structure or leader. *Id.* at 182.  Second, a "a group with significant continuity in membership can [be an advisory committee], even if its exact list or number of members is not set in stone." *Id.* at 183.  Finally, the "specific purpose" requirement, like the "organized structure" requirement, "is not a high bar to clear," and advising the Department on educational policy was "clearly" a specific purpose. *Id.* at 183-84.

*Carnahan v. Maloney*, 143 S. Ct. 2653 (2023), vacating *Maloney v. Murphy*, 984 F.3d 50 (D.C. Cir. 2020), on mootness grounds.  Plaintiffs cited *Maloney v. Murphy* in arguing that the EAC deprived Stark of his statutory right to review, comment, and make recommendations on the VVSG 2.0 proposed for adoption by failing to give him (or his fellow Board of Advisors members) the proposed VVSG 2.0 after the EAC's meetings with private vendors ninety days before the EAC's vote.  *See* Opp'n to Def.'s Mot. at 15.  While *Carnahan* vacated *Maloney* on the ground that the parties had resolved the dispute and remanded with instructions to dismiss, the Supreme Court expressed no doubt as to the D.C. Circuit Court's reasoning.  Thus, the D.C. Circuit Court's reasoning in *Maloney v. Murphy* remains persuasive and sound.

**Defendant's Position**

Defendant's position remains that the Court should dismiss this action, in its entirety, for lack of subject matter jurisdiction for the reasons stated in Defendant's briefs in support of their Motion to Dismiss or, in the Alternative, for Partial Summary Judgment.  As Defendant explained, FSFP has not satisfied either requirement for organizational standing, because its alleged injury of diversion of

---

[2] However, because the administrative record did not provide the court the information it would need to determine whether the Council was established in observance of the group-advice requirement, neither party was entitled to summary judgment on the APA claim as that record stood. *Cardona*, 630 F. Supp. 3d at 186.

resources merely reflects FSFP's own value judgment about how to prioritize its advocacy activities. FSPF now claims that "the EAC's adoption of the VVSG 2.0 injures FSFP's organizational activities by requiring FSFP to undertake additional, labor-intensive monitoring and analyses of voting systems to assess their security." *See supra.*  However, FSFP has not alleged specific facts that show that the VVSG 2.0 perceptibly impaired its ability to provide any "direct, non-advocacy services." *Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 256 (D.D.C. 2016) (citing *Food & Water Watch v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015)).  Here again, FSFP has merely reframed its *raison d'etre* as an Article III injury.  *See* Def.'s Mot. at 21.  FSFP's theory of standing continues to ignore that *no version* of VVSG has ever required—for purposes of voluntary certification—the policy favored by Plaintiffs—*i.e.,* that a voting system must be entirely physically devoid of any wireless technology.  The VVSG 2.0 is a continuation of the status quo in that respect.  Although FSFP would prefer for EAC to adopt FSFP's policy preference—and perhaps FSFP would be able to redirect its resources elsewhere if EAC were to do so—the continued advocacy work FSFP has always performed is insufficient for organizational standing.  *See* Def.'s Reply at 4-6.

The recent cases Plaintiffs cite are distinguishable and do not support their argument that FSFP has suffered an injury in fact.  In *White Coat Waste Project*, the court concluded that the plaintiff organization had standing because NIH's decision to exempt foreign grant recipients from maintaining animal care committees—and therefore from maintaining public records—"depriv[ed] it of key information it relies on to further its mission." 2023 WL 4930093, at *4 (citing *Food & Water Watch*, 808 F.3d at 919).  At least as to Counts I-V of the Complaint, Plaintiffs make no similar claim of denial of access to information.  Plaintiffs are fully aware of the (voluntary) standards adopted in the VVSG 2.0, and this lawsuit is merely part of their advocacy for a different policy position.

The D.C. Circuit's decision in *Humane Society* also does not help FSFP establish injury in fact. The organization in that case challenged the allegedly improper *withdrawal* of a final rule under which

6

the defendant agency would have assumed direct control of equine inspector licensure and training. 41 F.4th at 566-67. Unlike the VVSG 2.0, which did not change the status quo as to wireless capability restrictions, the withdrawal of the final rule in *Humane Society* required the organization to "redirect its limited and time and resources away from existing horse protection to identify, investigate, publicize and counteract" the absence of a more rigorous inspection regime. *Id.* at 567-68. Plaintiffs have alleged no comparable redirection of resources in response to the adoption of the VVSG 2.0.

Similarly, in *Curling*, the court addressed the organization's standing to challenge the defendants' adoption of a new voting system, despite concerns regarding its software and security. *See* 2023 WL 7463462 at *9-13. The court concluded that, in light of defendants' "continued use of the [ ] system and refusal to implement needed changes," plaintiffs had " 'credibly' asserted that [the organization] has diverted resources in response to Defendants' conduct." The same cannot be said here, where there has been no relevant change to the VVSG, and FSFP's efforts are merely a continuation of its work to advocate for what FSFP deems to be an acceptable level of election security. *See* Def.'s Reply at 3-4.

Regarding Mr. Stark, Plaintiffs acknowledge that, since briefing concluded on Defendant's motion, the Supreme Court vacated and remanded with instructions to dismiss the case on which Plaintiffs principally rely in their opposition to argue that Mr. Stark has standing. *See Maloney v. Murphy*, 984 F.3d 50 (D.C. Cir. 2020), *vacated*, *Carnahan v. Maloney*, 143 S. Ct. 2653 (2023). And for the reasons Defendants have explained, Mr. Stark has not adequately alleged any concrete injury in fact. *See* Def.'s Mot. at 21-22; Def.'s Reply at 6-7.

If the Court were to reach the merits of Plaintiffs' claims, notwithstanding the jurisdictional hurdles, the claims fail as a matter of law and should be dismissed—or partial summary judgment should be entered in Defendant's favor—for the reasons Defendant has explained. Plaintiffs now point to *America First Legal Foundation* in support of their FACA claim. However, unlike the circumstances of that case, Plaintiffs' FACA claim is moot, and Plaintiffs have not adequately alleged that the Working

Group rendered advice as a group rather than a collection of individuals. *See* Def.'s Mot. at 23-27, 36-39; Def.'s Reply at 7-11, 20-22. Moreover, even if the Court were to determine that Plaintiffs' pleadings were sufficient to assert a claim under FACA, the sworn declaration of Mona Harrington conclusively establishes that the Working Group was structured to solicit only the individual views of its participants and therefore is not a FACA advisory committee. *See* Def.'s Mot. at 39-40; Def.s' Reply at 20-24.

Dated:  March 22, 2024

 */Caroline L. Wolverton*
Matthew R. Nicely
D.C. Bar No. 430567
Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000

 */s/ Ronald Fein*
FREE SPEECH FOR PEOPLE
Ronald Fein
D.D.C. Bar No. MA0012
rfein@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Courtney Hostetler
chostetler@freespeechforpeople.org
1320 Centre Street, Suite 405
Newton, MA 02459
Tel: (617) 244-0234

*Counsel for Plaintiffs*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

LESLEY FARBY
Assistant Branch Director

 */s/ Bradley P. Humphreys*
Bradley Humphreys (D.C. Bar. No. 988057)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
(202) 305-0878
bradley.humphreys@usdoj.gov

*Counsel for Defendant*